UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
www.flsb.uscourts.gov

IN RE:                                           CASE NO. 21-21042-BKC-MAM

CITY VISION NATIONAL REVITALIZATION      CHAPTER 7
LLC,

    Debtor.
_____/

NICOLE TESTA MEHDIPOUR,
CHAPTER 7 TRUSTEE
FOR CITY VISION NATIONAL
REVITALIZATION LLC

                           Plaintiff,     Adversary Pro. No. _____

v.

FIRST NATIONAL BANK OF OMAHA D/B/A
FNBO

                           Defendant.
_____/

**COMPLAINT TO AVOID AND RECOVER FRAUDULENT TRANSFERS PURSUANT TO 11 U.S.C. 548, AND RECOVER ESTATE PROPERTY <u>PURSUANT TO 11 U.S.C. § 550</u>**

The Plaintiff, Nicole Testa Mehdipour, as Chapter 7 Trustee ("Trustee" or "Plaintiff") for the bankruptcy estate of City Vision National Revitalization LLC (the "Debtor"), pursuant to Sections 548 and 550(a) of Title 11 of the United States Code (the "Bankruptcy Code"), and Rule 7001 of the Federal Rules of Bankruptcy Procedure, files this adversary complaint against Defendant, **First National Bank of Omaha d/b/a FNBO** (the "Defendant"), to avoid and recover certain avoidable transfers and for other relief, and in support thereof, alleges as follows:

## THE PARTIES, JURISDICTION AND VENUE

1. This Court has jurisdiction to hear and determine this matter, pursuant to 28 U.S.C. §§ 157(a) and 1334(b).

2. This is a core proceeding pursuant to 28 U.S.C. § 157 (b)(2)(A), (H) and (O) and the Trustee consents to the entry of final orders and judgment by the Bankruptcy Court in accordance with Fed. R. Bankr. P. 7008(a).

3. Venue is proper in this district pursuant to 28 U.S.C. §§1408 and 1409.

4. On November 19, 2021, certain petitioning creditors filed an Involuntary Petition for relief [Main Proceeding, ECF # 1].

5. On January 5, 2022, the Court entered order for relief in involuntary case [Main Proceeding, ECF # 8], and on February 1, 2022, Nicole Testa Mehdipour was appointed Chapter 7 Trustee [Main Proceeding, ECF # 14]

6. The Defendant is a foreign corporate entity doing business in the State of Florida in this jurisdiction.

7. Defendant and Plaintiffs executed a tolling agreement on November 29, 2023, tolling the applicable statute of limitation through March 30, 2024.

8. All conditions precedent to the filing of this action have been performed, waived, satisfied, or have occurred.

## FACTS COMMON TO ALL COUNTS

9. Prior to the Petition Date, Debtor was in the business of purchasing residential real properties at a discount throughout the country, substantially renovating them, and selling them for what it believed would be a profitable venture, but never was.

2

10. The Debtor did not have its own employees, assets (other than real properties), and/or management office, and instead leased its entire operations from and was managed by Bankruptcy Global Holdings, LLC ("BK Global"), an insider as defined by 11 U.S.C. 101(31).

11. Specifically, BK Global provided all evaluation and due diligence for purchase of the real properties, construction management and supervision of capital expenditures made in connection with the renovations made to the real properties, listing and marketing of the properties for sale, including coordination with prospective buyers and their representatives, coordination and management of the closing process for the sale of real properties, procurement of required financing for the purchase of the real properties, and providing all accounting, legal and other related administrative services necessary (collectively, the "Services").

12. Under its agreement with BK Global, Debtor agreed to reimburse BK Global for all its expenses incurred in connection with the Services provided by BK Global.

13. Both the Debtor and Bankruptcy Global were fully managed by and partially owned by an insider as defined by 11 U.S.C 101, Mr. Brad Geisen ("Geisen"). Upon information and belief, Geisen owned other businesses; all entities that are unrelated to the Debtor, its business, and/or its operations, and unrelated to BK Global's agreement with the Debtor and services provided to the Debtor.

14. Through the entirety of the Debtor's existence, Geisen treated the Debtor's bank account at TD Bank, account ending at 6213, as his own, and effectuated

3

payment of his personal and/or other business credit accounts. Credit accounts that were not owned by and had no connection with the Debtor and its business.

*The Transfers*

15. The Debtor made transfers, as reflected in **Exhibit "A"** attached hereto and incorporated herein, to the Defendant (collectively, the "Transfers"). All of the Transfers were paid from Debtor's bank account(s) at TD Bank, ending at 6213 to Defendant, and used to pay credit account associated with Geisen and/or his other businesses. These Transfers were not made in exchange for any value or benefit to the Debtor.

16. Debtor's bank account(s) at TD Bank, ending at 6213, reflected the following payment description associated with each of the Transfers: "1ST BANKCARD CTR ONLINE PMT." Upon information and belief, said description on banking statements is commonly used by Defendant to reflect payments received.

17. The Transfers served no legitimate business purpose to the Debtor.

18. The Debtor did not receive reasonably equivalent value for the Transfers.

19. The Debtor did not receive any direct or indirect benefit for having made such Transfers to the Defendant.

20. Upon information and belief, the Debtor was always insolvent, from its date of formation and through the Petition Date, as evidenced in part by Debtor's books and records. The Debtor was insolvent on the dates that the Transfers were made, or was rendered insolvent because of the Transfers, up to and through the Petition Date. Accordingly, the Transfers occurred at the time when the Debtor knew, or should have known, that the funds were being transferred at the expense of paying creditors.

4

21. At the time of the Transfers, the Debtor was not paying its debts as they became due. For instance, at the time of the Transfers, the Debtor was not paying certain of its vendors on time and/or not paying its debts to vendors at all, including BK Global for its services.

22. As evidenced by the Debtor's schedules and the Proof of Claim register for the Debtor's estate, multiple creditors existed prior to the Petition Date that could have, and would have been entitled to the Transfers, including but not limited to Charles W Uhrig Trust No. 1 and Charles W Uhrig Trust No. 2.

## COUNT I

### Avoidance and Recovery of Fraudulent Transfers
### Pursuant to 11 U.S.C. §§548 and 550

23. Plaintiff hereby re-alleges every allegation in paragraphs 1 through 22 as if fully set forth herein.

24. This is an action to avoid and recover all or part of the Transfers as fraudulent transfers made by the Debtor to the Defendant pursuant to 11 U.S.C. § 548 and 550.

25. Pursuant to § 548 of the Bankruptcy Code, the Trustee may avoid any transfer of an interest of the Debtor in property, or any obligation incurred by the Debtor, that was made or incurred on or within two (2) years before the date of the filing of the petition, if the debtor voluntarily or involuntarily:

> A. made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or

5

B.    (i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(ii)   (I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
(II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;
(III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or
(IV) made such a transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

26. Pursuant to § 550 of the Bankruptcy Code, a fraudulent transfer action commenced under § 548 of the Bankruptcy Code, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from – (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or (2) any immediate or mediate transferee of such initial transferee.

27. Certain of the Transfers ("548 Transfers") constitute transfers of an interest in property of the Debtor to the Defendant within two (2) years prior to the Petition Date.

28. The 548 Transfers were made with actual intent to hinder, delay, or defraud entities regarding which the Debtor was obligated to, or became obligated, on or after the date of such transfers.

29. In addition, the Debtor did not receive reasonably equivalent value for the 548 Transfers and it: (i) was insolvent at the time of the 548 Transfers or became insolvent as a result thereof; (ii) was engaged or was about to engage in a business or

6

transaction for which the remaining assets of the Debtor were unreasonably small in relation to the business or transaction; and/or (iii) intended to incur, or believed or reasonably should have believed, that it would incur debts beyond its ability to pay as they came due.

30.     As a result of the 548 Transfers, the Plaintiff has been damaged for the total value of the funds transferred.

31.     Pursuant to §550(a) of the Bankruptcy Code, to the extent all or a portion of the 548 Transfers are avoided, the Trustee is entitled to recover such transfers or the value of such property from the Defendant as the initial transferee or as the entity for whose benefit the 548 Transfers were made, or as immediate or mediate transferee of such initial transferee.

WHEREFORE, the Plaintiff respectfully requests the entry of judgment against the Defendant (i) avoiding all or part of the 548 Transfers; (ii) ordering and directing the payment of a monetary award in the amount of the avoided Transfers, plus such additional amounts and property as may be discovered through these proceedings, together with accrued pre-judgment interest; (iii) ordering the payment of all costs and expenses incurred in regard to this action; (iv) disallowing any claim(s) the Defendant may have against the Debtor, pursuant to §502(d) of the Bankruptcy Code, until such time the Defendant pay the 548 Transfers asserted herein; and (v) awarding any other relief the Court deems appropriate.

## **RESERVATION OF RIGHTS**

32.     The Plaintiff reserves the right to amend this Complaint and to add additional claims as they may be discovered.

Dated: March 21, 2024

                          **LAW OFFICE OF NICOLE TESTA MEHDIPOUR, P.A.**
*General Counsel for Trustee*
6278 N. Federal Highway, Suite 408
Fort Lauderdale, FL 33308
Tel: (954) 858-5880   Fax: (954) 208-0888

/s/ Nicole Testa Mehdipour
Nicole Testa Mehdipour
Florida Bar No. 177271
NicoleM@ntmlawfirm.com

-and-

**ALIGNX LAW**
*Special Counsel to the Trustee*
12555 Orange Drive, Suite 4159
Davie, Florida 33330
Telephone: (954) 686-7399

By: /s/ Ido J. Alexander
    IDO J. ALEXANDER, ESQ.
    Florida Bar No. 51892
    ija@AlignXLaw.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served on March 21, 2024, to all parties on the list to receive e-mail notice/service for this case, via the Notice of Electronic Filing (which is incorporated herein by reference).

                          By:_____/s/_____
                                Ido J. Alexander

**Exhibit "A"**

**(Transfers)**

| Date | Paid To | Payment |
|---|---|---|
| 7/27/2020 | 1ST BANKCARD CTR ONLINE PMT | $13,551.23 |
| 8/25/2020 | 1ST BANKCARD CTR ONLINE PMT | $6,597.07 |
| 9/28/2020 | 1ST BANKCARD CTR ONLINE PMT | $8,344.34 |
| 10/27/2020 | 1ST BANKCARD CTR ONLINE PMT | $7,994.94 |
| 11/10/2020 | 1ST BANKCARD CTR ONLINE PMT | $560.00 |
| 12/24/2020 | 1ST BANKCARD CTR ONLINE PMT | $379.13 |
| 2/8/2021 | 1ST BANKCARD CTR ONLINE PMT | $23,731.10 |
| 3/2/2021 | 1ST BANKCARD CTR ONLINE PMT | $14,931.87 |
| 3/29/2021 | 1ST BANKCARD CTR ONLINE PMT | $12,122.08 |
| 3/29/2021 | 1ST BANKCARD CTR ONLINE PMT | $37.28 |
| 4/27/2021 | 1ST BANKCARD CTR ONLINE PMT | $1,044.14 |
| 4/27/2021 | 1ST BANKCARD CTR ONLINE PMT | $27.58 |
| 5/26/2021 | 1ST BANKCARD CTR ONLINE PMT | $963.23 |
| 6/28/2021 | 1ST BANKCARD CTR ONLINE PMT | $5,338.24 |
| 7/27/2021 | 1ST BANKCARD CTR ONLINE PMT | $2,696.68 |
| 8/26/2021 | 1ST BANKCARD CTR ONLINE PMT | $213.26 |
|  | **Total** | **$98,532.17** |